CHARLES L. ABERNETHY v. BOARD OF COMMISSIONERS OF PITT COUNTY.

(Filed 13 October, 1915.)

**1. Statutes—Interpretation—Intent.**

When construing a statute the words used therein will be given their ordinary meaning, unless it appears from the context that they should be taken in a different sense; and where the statute is plainly and unambiguously expressed, conveying a single, definite, and sensible meaning, where no construction is allowable, its intendment must be ascertained from the language used, and a literal meaning given it.

**2. Same—Words Omitted.**

When it is necessary to carry out the clear meaning of a statute, and to make it sensible and effective, the court may interpolate the words necessary thereto, which were evidently omitted, as appears from the context, or silently understand them to be incorporated in it. *Fortune v. Commissioners,* 140 N. C., 322.

**3. Statutes—Interpretation—In Pari Materia.**

To ascertain the mischief which an act of the Legislature was intended to remove, it is permissible, in the interpretation thereof, to consider other statutes, related to the particular subject, or to the one under construction.

**4. Same—Solicitors' Salaries—Fees.**

A legislative enactment created a recorder's court in a certain county, giving it extensive jurisdiction of criminal offenses committed therein,

and also enacted a law directing the county commissioners to pay the solicitor of the district six hundred dollars annually "in lieu of fees now provided by law." *Held,* construing these two statutes together, that the Legislature intended to compensate the solicitor for the fees he would be deprived of by the establishment of the recorder's court, by paying him a sum certain as a salary in lieu of all fees, whether full fees paid by solvents or half fees paid by the county for insolvents (Revisal, section 2768), upon convictions had.

**5. Same—Implication.**

Interpreting an act directing the county commissioners to pay the solicitor in that district six hundred dollars "in lieu of fees now provided by law, which the said solicitor would receive from the said county . . . on account of convictions in the criminal courts of the county by said solicitor": *Held,* the intent of the Legislature unmistakably being that the stated salary was to be in lieu of all fees, including the half fees paid by the county for insolvents, it is necessarily implied that all the fees shall be turned into the county treasury to increase its general fund, the fees that he would otherwise have received having been commuted in this way, and the county receiving the fees in return for the salary paid.

**6. Statutes—Interpretation—Intent—Affidavits of Legislators.**

The intent of the Legislature is expressed in the statute, and must be ascertained from its words; therefore, affidavits of Senators and Representatives in the Legislature as to its meaning will not be considered for the purpose of construing it, where construction is necessary.

APPEAL by defendant from *Bond, J.,* at the August Term, 1915, of PITT.

Civil action, heard upon a case agreed, submitted, under the statute, as a controversy without action, which is as follows:

There has arisen a controversy between the board of commissioners of Pitt County and Charles L. Abernethy, solicitor of the Fifth Judicial District, relative to the meaning and construction of an act of the Legislature, towit, Public Laws of 1915, ch. 623, which reads as follows:

*The General Assembly of North Carolina do enact:*

SECTION 1. The board of commissioners of the county of Pitt are hereby directed, authorized, and empowered to cause the treasurer of Pitt County to pay the solicitor of the Fifth Judicial District the sum of six hundred dollars annually, to be paid monthly in lieu of fees now provided by law, which the said solicitor would receive from time to time from the county of Pitt on account of convictions in the criminal courts of the county by said solicitor.

SEC. 2. This act shall be in force from and after its ratification.

Ratified this the 8th day of March, A. D. 1915.

The said Charles L. Abernethy, solicitor, plaintiff, contends that the act means that he is to receive from the county of Pitt the sum of six hundred dollars annually in lieu of such fees as the county would be bound to pay the said solicitor from the treasury of the county, under

former law, and that under the law, since said act was passed, he is in addition thereto entitled to receive such fees as defendants pay themselves in the criminal Superior Courts of said county in cases wherein there are convictions of said defendants in criminal cases. The commissioners of the county of Pitt contend that the said act means that all fees the said solicitor would receive are to be paid into the treasury of Pitt County, and that he is not to receive any sum for prosecuting crimes, or from any other source in the said county, except the said sum of six hundred dollars per annum, and that the same shall be in lieu of all compensation or fees to be received by said solicitor for all services rendered by him in his official capacity, except twenty dollars a term from the State for attending court.

Now, therefore, in order that the question in difference, which might be the subject of a civil action, may, without such action, be settled between the parties, the said board of commissioners of Pitt County, through their attorney, and the said Charles L. Abernethy, hereby submit the said act for interpretation to his Honor, *W. M. Bond, Judge,* riding the courts of the Fifth Judicial District, to the end that the said question may be determined by the court, each party reserving the right to appeal to the Supreme Court.

This statement of case, with the attached statement of the said solicitor and the. Senator and the Representatives, shall constitute the record.                                              S. J. EVERETT,
*Attorney for the Board of Commissioners of Pitt County.*

(Verified.)                              CHARLES L. ABERNETHY,
*Solicitor of the Fifth Judicial District.*

Statement of Senator and Representatives, referred to in case agreed:

We, the undersigned, being the Senator and Representatives of Pitt County in the Legislature of 1915, state, in reference to the Public Laws of 1915, chapter 623, set out in the statement of case between the solicitor of the Fifth Judicial District and the commissioners of Pitt County, that it was our understanding and agreement with the solicitor, when the act was passed, that it would include all the fees of every kind that he was to receive in his official capacity as prosecuting attorney and solicitor for services in Pitt County, and repealed all other laws in conflict therewith.

This 30 August, 1914.        (Signed)   F. C. HARDING,
                                                        *Senator.*

J. J. LAUGHINGHOUSE,
J. C. GALLOWAY,
                                                *Representatives.*

Statement of solicitor:

The undersigned solicitor of the Fifth Judicial District says, with reference to the statement of the Representatives from Pitt County, that there is a very great difference in his understanding and theirs as to the bill that was passed, towit, chapter 623 of the Public-Local Laws of 1915. The said solicitor very much regrets any misunderstanding between the Representatives and himself, and accords to them the right to have their own understanding, but respectfully submits to the court that the act, which is the matter in controversy, speaks for itself, and the proper legal construction of the same can be and is the only understanding that there could be between the Representatives and the solicitor. That prior to the passage of this act the solicitor received, from all sources from the county of Pitt and the defendants, amounts aggregating from twelve to sixteen hundred dollars per year. If the act should be construed as the solicitor contends it should be, the county of Pitt will receive a part of the compensation, which would be coming to the solicitor under the general law, in excess and in addition to what the said county of Pitt would be liable for to the solicitor from the prosecution of the criminal dockets of said county. To show the good faith of the solicitor in his contention, if the matter could be so construed by the court, he is perfectly willing that the act be declared null and void, and to leave the matter as it would have been without the passage of the act. If the act should be construed by the court as the solicitor contends, the county of Pitt will be the gainer by the act and the solicitor would be the loser.

Respectfully submitted,

CHARLES L. ABERNETHY,

Solicitor.

The court rendered the following judgment:

This cause coming on to be heard on a controversy submitted without action, on agreed facts, under The Code, both sides being present, upon consideration of the facts agreed the court is of opinion that the meaning of the statute must be arrived at solely by a construction of its language, and that its meaning cannot be shown, or assisted, or affected in any way by any actual or supposed agreement on the part of members of the Legislature which passed the act.

The court is further of the opinion that the compensation provided in the act referred to, to be paid to said Abernethy by said county of Pitt, is in lieu of such fees as said county would have had to pay under the law existing at the time said act was passed in cases of conviction against insolvents, and that it has not in any way affected the right of said Abernethy to collect and receive, just as he has done before the passage of said act, all fees taxed by law against defendants who paid

the cost. This view of the matter is strengthened in the opinion of the court by reason of the fact that said law contains no provision ordering the payment into the county treasury of any fees paid by convicted defendants who were or are able to pay the cost taxed against them.

It is therefore considered, ordered and adjudged, that as to all cases of convictions against defendants who pay the cost, said Solicitor Abernethy is entitled to his fees in such cases just as if the said act had not been passed, and that the county of Pitt has nothing whatever to do with any of the fees taxed in favor of the solicitor, except those in cases of insolvent defendants. The monthly payments are in lieu of such sums as the county of Pitt would have had to pay to said Abernethy, in cases of conviction of insolvents, if said act had not been passed.

It is adjudged that said C. L. Abernethy recover the costs of this case, to be taxed by the clerk of this court, against the defendants.

This 4 September, 1915.                          W. M. BOND, *Judge*.

Defendant excepted to the judgment and appealed to this Court.

*M. Leslie Davis for plaintiff.*
*S. J. Everett for defendant.*

WALKER, J., after stating the case: This is an unfortunate controversy which has arisen between the parties, growing out of their misunderstanding as to what was intended to be done, and as to the manner of expressing their purpose, if they had fully agreed upon the matter; but we must seek for and find the intention by the rules prescribed for legal interpretation, where there is any doubt as to the meaning of a statute or other instrument. The words used shall be given the ordinary meaning, unless it appears from the context, or even otherwise, in the statute, that another and different sense was intended. The object of all interpretation, or construction, is to ascertain the meaning and intention of the Legislature, to the end that the same may be enforced, which must be sought first of all in the language of the statute itself, for it must be presumed that the means employed by the Legislature to express its will are adequate to the purpose, and do express that will correctly.

If the language of the statute is plain and free from ambiguity, and expresses a single, definite, and sensible meaning, that meaning is conclusively presumed to be the one which the Legislature intended to convey, or, in other words, the statute must then be interpreted literally. Even though the court should be convinced that some other meaning was really intended by the law-making power, and even though the literal interpretation should defeat the very object of the enactment, still the explicit declaration of the Legislature is the law, and the courts must not depart from it.

If the language of the statute is ambiguous or lacks precision, or is fairly susceptible of two or more meanings, the intended sense of it may be sought by the aid of all pertinent and admissible considerations. But here, as before, the object of the search is to find the true intention of the Legislature, and the Court is not at liberty, merely because it has a choice between two constructions, to substitute for the will of the Legislature its own ideas as to the justice, expediency, or policy of the law. Black on Interpretation of Laws, pp. 35, 36. The object, therefore, being to extract from the language itself the intent or purpose, so that the legislative will may be enforced, we proceed to consider a little further what may specially be done as permissible under this rule.

Where the meaning is plain and unmistakable, the rule does not require that we should construe the statute with such literal exactness as to exclude the right to insert words evidently omitted as appears from the context, for they may be interpolated or silently understood as incorporated in it, when it is necessary to carry out the clear meaning and to make the statute sensible and effective. Black on Interpretation of Laws, p. 84, sec. 40. Another way to express this idea is, that when the language is elliptical, the words which are obviously essential to complete the sense will be supplied, but they should never be inserted, nor should the words which are used undergo any change, unless finally to effect a meaning manifestly appearing from the other parts of the statute, and to execute fully the intention somewhere expressed. (*Ibid.*, pp. 84, 85, and cases cited in the notes.) Mr. Black states numerous instances, at pp. 85, 86, where a word and even words have been put into a statute to fill it out according to the evident meaning gathered from a consideration of its context.

The foregoing principles were substantially stated and applied by us in *Fortune v. Commissioners,* 140 N. C., 322. We there said, at p. 327: "The use of inapt, inaccurate or improper terms or phrases will not invalidate the statute, provided the real meaning of the Legislature can be gathered from the context, or from the general purpose and tenor of the enactment. Clerical errors or misprisions which, if not corrected, would render the statute unmeaning or incapable of reasonable construction or would defeat or impair its intended operation, will not necessarily vitiate the act, for they will be corrected, if practicable. Nor will mere inadvertences or omissions have that effect, provided they can be supplied by reference to the context or to other statutes, and the true reading of the statute made obvious and its real meaning apparent." We may call to our aid, then, other laws or statutes related to the particular subject, or to the one under construction, so that we may know what the mischief was which the Legislature intended to remove or to remedy.

Having these principles clearly set before us for our guidance, and not being unmindful of some others subsidiary to ·them, and of more or less importance, but which it is not necessary to set out, we proceed to consider the act under review and to seek for its true meaning according to these rules of interpretation. The Legislature, on the very day that this act was ratified, had passed another by which it established a recorder's court in the county of Pitt, with a large and extensive jurisdiction of criminal offenses in that county. This of necessity withdrew many matters of a criminal nature from the jurisdiction of the Superior Court, wherein the solicitor represented the public interests and prosecuted in behalf of the State, and consequently reduced his income from that source. It was in fairness to him, or to prevent any injustice by this lowering of his receipts from his official business in the county, that this act was passed, and we must construe it in the light of this fact.

The statute, upon its face, shows that it was passed to correct some evil that might follow if his compensation was not gauged by the salary instead of the fee basis. This helps us greatly to discover the real meaning of the act. The solicitor contends that he was to get the six hundred dollars in lieu of the half fees he had theretofore or under the former law received from convictions of insolvent persons, which were paid by the county (Revisal, sec. 2768), and not by the defendants themselves, as in cases where they were solvent and able to pay. Revisal, sec. 1291. But we cannot accept this as correct, because the language of the act, when properly construed, will not permit us to do so, and we are confined to that, as if we depart from it we may be in danger of disappointing the intention of the Legislature. It was said on the argument, and not disputed, that the annual average of insolvent fees in the county had been about two hundred and fifty dollars, and if this be true, the Legislature surely did not intend to give nearly three times as much in lieu thereof. But not being influenced by this fact, as stated, we think the act itself furnishes sufficient evidence of the meaning intended to be given to it, and we cannot escape the conclusion that the learned judge misconstrued it, notwithstanding the *casus omissus* which was supposed to make its meaning very clear.

The act provides that the defendants shall cause to be paid annually by the county treasurer to the solicitor, in monthly installments, the total sum of six hundred dollars "in lieu of fees *now provided by law,* which the said solicitor would *receive* from time to time from the said county of Pitt *on account of convictions in the criminal courts of the county by said solicitor."* (Italics ours.) There is not one word of reference to solvent or insolvent defendants, to whole fees or half fees, but, on the contrary, the amount is to be paid in·full compensation to

him, or in lieu of fees, according to the present scale, which he would receive from the county in all cases where there were convictions in criminal cases prosecuted by him. There is no allusion to half fees, or to any fees for which the county alone would be bound by reason of the insolvency of defendants, but the expression is broad and all-inclusive, embracing every prosecution by him of a criminal case in any court in his official capacity, where there is a conviction, and regardless of the solvency or insolvency of the defendants.

The expression fees *"received"* from the county of Pitt does not necessarily mean the half fees which were paid by the county because of the insolvency of the defendants, but rather all fees received from criminal prosecutions in the county or from such business in the county. The word "receive" does not always carry with it the meaning that something has been given in payment of an obligation. It is not infrequently used as signifying merely the place from which or the person from whom the money or the thing which is transferred from one to another has come, and the context of this act shows that to be the meaning of the word as therein employed. A person may receive a thing in many ways not implying a payment or an obligation to pay. If the Legislature had intended otherwise it would have been quite easy to express its meaning in a few and simple words. It would naturally have qualified the word "fees" by the adjective *half,* so as to confine it to half fees or the word "convictions," by limiting its scope to those cases in which the defendants were insolvent. It had carefully done so in all prior enactments relating to this subject. The statute creating the recorder's court invests it with a very broad jurisdiction, embracing nearly every offense, except capital felonies and felonies of the higher grade, known to the law, and those of usual occurrence in our State. It was supposed, therefore, that the returns of the solicitor from criminal business in that county would be *considerably* lessened, and so much so that it would be better to allow him a sum *in solido* in lieu of fees to compensate him for this loss.

It must be true that if the intent was to refer solely to fees coming to the solicitor in insolvent cases, the Legislature would have made it clear by limiting the words of the statute, in their application, to that class of fees, there being two kinds, and not have amplified the language so as to embrace fees in cases of both kinds. The plain meaning of the act is that the six hundred dollars is to be paid by the county in lieu of fees which, but for this provision of the law, would have been received by the solicitor from all criminal cases in the county if convictions were obtained, and whether the defendants were solvent or not, and this we hold to be the correct interpretation of the statute. Nor do we think that the omission to expressly direct that all fees

thereafter accrued in criminal cases, where the defendants are solvent, and which the solicitor would otherwise get, should be taxed in the costs and paid to the county, can be permitted to change this meaning. As the lump sum is to be paid in place of the fees by the county, there is a necessary implication that the latter shall be turned into the county treasury to increase its general fund, for as it was not provided that the solicitor should have them, being paid a certain sum in lieu thereof, in the absence of any special application of them to some other purpose, they should go to the county which has furnished the money to commute them, and we cannot infer that they must go to the person who has received the commutation allowance.

Any possible inference as to the true meaning of the act, to be drawn from this omission of any express direction that the fees be paid to the county, is more than rebutted by the plain words of the Legislature in declaring its purpose. The entire framework of the act, when considered with proper reference to other related legislation, so plainly and completely embodies this idea that it is impossible to give the statute any other construction, but we do not by any means intend to imply that there was not justifiable ground for a division of opinion in regard to its terms and a consequent disagreement as to its meaning, and it was entirely proper and very seemly, therefore, that the matter should have been submitted to us for final settlement, and thereby close a controversy distasteful to both parties.

In order to exclude an inference that may possibly be drawn from the opinion in regard to the statements of the Senator and Representatives on the one side and the solicitor on the other, we will add that we have not considered them at all, as it is not within our province or jurisdiction to construe statutes by such extraneous matter. Even if the collective intention of the members of both legislative bodies had been shown by proof, we could not consider it, as an unexpressed intention passes for nothing in such cases. We must interpret the meaning by what is said and not by what was intended to be said, but not expressed. If we should attach any importance to such extrinsic proof of the intention, statutory law would depend upon uncertain and almost unprovable intentions, instead of being based upon the written word. It is so with contracts, and must more surely be so with constitutions and statutes. Authorities that sustain this position are not hard to find.

This Court said in *S. v. Partlow*, 91 N. C., 550, 552: "The meaning (of the Legislature) must be ascertained from the statute itself, and the means and signs to which, as appears upon its face, it has reference. It cannot be proved by a member of the Legislature or other person, whether interested in its enactment or not. A statute is an act of the

Legislature as an organized body. It expresses the collective will of that body, and no single member of it, or all the members as individuals, can be heard to say what the meaning of the statute is. It must speak for and be construed by itself, by the means and signs indicated above. Otherwise, each individual might attribute to it a different meaning, and thus the legislative will and meaning be lost sight of. Whatever may be the views and purposes of those who procure the enactment of a statute, the Legislature contemplates that its intention shall be ascertained from its words as embodied in it. And courts are not at liberty to accept the understanding of any individual as to the legislative intent." Citing *S. v. Boon,* 1 N. C., 103; *Drake v. Drake,* 15 N. C., 110; *Adams v. Turrentine,* 30 N. C., 147; *S. v. Melton,* 44 N. C., 49; *Blue v. McDuffie, ibid.,* 131; Potter's Dwarris on Statutes, 179 *et seq.* Besides, it is not necessary that we should attach any significance to the statements, as the act is plainly worded and speaks for itself, without any external aid, except other cognate statutes.

We have, therefore, reached the conclusion that the solicitor is entitled only to the salary in lieu of fees for convictions in all criminal cases he prosecutes in the county. Let the judgment upon the case agreed be reversed, with costs, and it will be so certified.

Reversed.