IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-20

 No. 447A19

 Filed 12 March 2021

 STATE OF NORTH CAROLINA

 v.
 RYAN KIRK FULLER

 Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of

 the Court of Appeals, 268 N.C. App. 240 (2019), affirming an order entered on 23

 October 2018 by Judge A. Graham Shirley in Superior Court, Wake County. Heard

 in the Supreme Court on 11 January 2021.

 Joshua H. Stein, Attorney General, by Ryan Y. Park, Solicitor General, and
 Caryn Devins Strickland, Solicitor General Fellow, for the State-appellee.

 Glenn Gerding, Appellate Defender, by Andrew DeSimone, Assistant Appellate
 Defender, for defendant-appellant.

 BERGER, Justice.

¶1 On October 23, 2018, defendant Ryan Kirk Fuller pleaded guilty to secret

 peeping pursuant to N.C.G.S. § 14-202(d). The trial court placed defendant on

 supervised probation and ordered him to register as a sex offender under N.C.G.S. §

 14-202(l). Defendant appealed the order of sex offender registration, and the Court

 of Appeals affirmed the trial court’s order. Defendant appeals.

 I. Factual and Procedural Background
 STATE V. FULLER

 2021-NCSC-20

 Opinion of the Court

¶2 In August 2018, defendant lived with the Smith1 family, whom he had known

 for over ten years, in their home in Apex, North Carolina. On August 17, 2018, Mr.

 Smith was watching television in his living room. Mr. Smith stepped outside to

 smoke a cigarette, and when he returned inside, Mr. Smith saw an image on his

 television of his wife undressing. Mrs. Smith was not home at the time, and the image

 was not from a live feed. Mr. Smith saw defendant, and he noticed defendant

 watching the video which contained the image of Mrs. Smith. Mr. Smith demanded

 that defendant leave the house and immediately reported the incident to the Apex

 Police Department.

¶3 Officers later spoke with defendant and obtained consent to search his

 computer. The search of defendant’s laptop computer, cell phone, and external hard

 drives revealed that defendant had saved images and videos of Mrs. Smith in various

 states of undress from June 2018 to August 2018. Officers were able to determine

 that defendant had deployed a camera in the Smith’s home to obtain photographs

 and videos of Mrs. Smith. Defendant moved the device between the Smiths’ bedroom

 and bathroom. When questioned by officers, defendant waived his Miranda rights

 and admitted to deploying the camera and possessing images of Mrs. Smith.

 Defendant stated that he installed the camera because “he had developed feelings for

 [Mrs. Smith] at some point in the course of their friendship.”

 1 Due to the sensitive nature of this case, pseudonyms will be used.
 STATE V. FULLER

 2021-NCSC-20

 Opinion of the Court

¶4 On September 11, 2018, defendant was indicted on three counts of secret

 peeping. On October 23, 2018, defendant pleaded guilty to one count of felony secret

 peeping pursuant to a plea arrangement with the State. The parties agreed that

 defendant would receive a suspended sentence and be placed on supervised probation

 for a period of twenty-four months. In addition, defendant was required to submit to

 a “mental health evaluation specific to sex offenders and comply with recommended

 treatment.” The issue of sex offender registration was to be determined by the trial

 court. The plea was accepted by the trial court, and a hearing was then held to

 determine whether defendant would be required to register as a sex offender. Based

 upon the arguments of the parties, the trial court ordered defendant to register as a

 sex offender for thirty years. The trial court did not consider a Static-99 assessment

 when it determined that sex offender registration was appropriate.

¶5 On October 30, 2018, defendant filed written notice of appeal. In an opinion

 filed November 5, 2019, the Court of Appeals affirmed the trial court’s order requiring

 defendant to register as a sex offender because the trial court’s finding that defendant

 was a “danger to the community” was supported by competent evidence. State v.

 Fuller, 268 N.C. App. 240, 245, 835 S.E.2d 53, 56 (2019). The dissenting judge argued

 that there was insufficient evidence supporting the trial court’s finding that

 defendant was a “danger to the community.” Id. at 250, 835 S.E.2d at 59 (Brook, J.,

 dissenting). Specifically, the dissenting judge contended that the State could not
 STATE V. FULLER

 2021-NCSC-20

 Opinion of the Court

 show defendant was a “danger to the community” because the State failed to present

 evidence that defendant was likely to reoffend pursuant to State v. Pell, 211 N.C. App.

 376, 712 S.E.2d 189 (2011), and State v. Guerrette, No. COA18-24, 2018 WL 4702230

 (N.C. Ct. App. Oct. 2, 2018) (unpublished). Id. at 252–53, 835 S.E.2d at 61.

¶6 Defendant argues that the Court of Appeals erred when it affirmed the trial

 court’s order which required defendant to register as a sex offender based on the

 finding that he was a “danger to the community.” We disagree.

 II. Standard of Review

¶7 The determination of whether an individual “is a danger to the community”

 under N.C.G.S. § 14-202(l) is an ultimate fact to be found by the trial court. “There

 are two kinds of facts: Ultimate facts, and evidentiary facts.” Woodard v. Mordecai,

 234 N.C. 463, 470, 67 S.E.2d 639, 644 (1951).

 Ultimate facts are those found in that vaguely defined area
 lying between evidential facts on the one side and
 conclusions of law on the other. In consequence, the line of
 demarcation between ultimate facts and legal conclusions
 is not easily drawn. An ultimate fact is the final resulting
 effect which is reached by processes of logical reasoning
 from the evidentiary facts. Whether a statement is an
 ultimate fact or a conclusion of law depends upon whether
 it is reached by natural reasoning or by an application of
 fixed rules of law.

 Id. at 472, 67 S.E.2d at 645 (citations omitted).

¶8 A trial court’s finding of an ultimate fact is conclusive on appeal if the

 evidentiary facts reasonably support the trial court’s ultimate finding. Williams v.
 STATE V. FULLER

 2021-NCSC-20

 Opinion of the Court

 Pilot Life Ins. Co., 288 N.C. 338, 343, 218 S.E.2d 368, 372 (1975); see also Sherrill v.

 Boyce, 265 N.C. 560, 560, 144 S.E.2d 596, 597 (1965) (per curiam); State Tr. Co. v. M

 & J Fin. Corp., 238 N.C. 478, 484, 78 S.E.2d 327, 332 (1953). Thus, we must uphold

 the sex offender registration order if there are evidentiary facts that could reasonably

 support the trial court’s determination that defendant “is a danger to the

 community.”

¶9 Moreover, because this is the first opportunity for this Court to address sex

 offender registration pursuant to N.C.G.S. § 14-202(l), we interpret that statute de

 novo. See City of Asheville v. Frost, 370 N.C. 590, 591, 811 S.E.2d 560, 561 (2018)

 (“We review questions of statutory interpretation de novo.”).

 III. Analysis

¶ 10 Generally, sex offender registration is required upon a defendant’s conviction

 of a reportable sex offense. See N.C.G.S. § 14-208.7(a) (2019) (“A person who is a

 State resident and who has a reportable conviction shall be required to maintain

 registration with the sheriff of the county where the person resides.”); N.C.G.S. § 14-

 208.6(4)(a) (2019) (defining what constitutes a reportable conviction); N.C.G.S. § 14-

 208.6(5) (2019) (defining what constitutes a sexually violent offense).

¶ 11 However, even though the crime of secret peeping is a sex offense, registration

 based upon a conviction for committing that offense is dependent upon additional

 considerations by the trial court. See generally N.C.G.S. § 14-202(d), (l). Following a
 STATE V. FULLER

 2021-NCSC-20

 Opinion of the Court

 conviction for secret peeping pursuant to N.C.G.S. § 14-202(d), the trial court

 shall consider whether the person is a danger to the
 community and whether requiring the person to register as
 a sex offender pursuant to Article 27A of this Chapter
 would further the purposes of that Article as stated in G.S.
 14-208.5. If the sentencing court rules that the person is a
 danger to the community and that the person shall
 register, then an order shall be entered requiring the
 person to register.

 N.C.G.S. § 14-202(l) (2019). Thus, a defendant convicted of secret peeping under

 N.C.G.S. § 14-202(d) is required to register as a sex offender only when the trial court,

 after considering the purposes of the Sex Offender and Public Protection Registration

 Programs, determines that a defendant “is a danger to the community.”

¶ 12 Section 14-208.5 sets forth the purposes of the Sex Offender and Public

 Protection Registration Programs as follows:

 The General Assembly recognizes that sex offenders
 often pose a high risk of engaging in sex offenses even after
 being released from incarceration or commitment and that
 protection of the public from sex offenders is of paramount
 governmental interest.

 The General Assembly also recognizes that persons
 who commit certain other types of offenses against minors,
 such as kidnapping, pose significant and unacceptable
 threats to the public safety and welfare of the children in
 this State and that the protection of those children is of
 great governmental interest. Further, the General
 Assembly recognizes that law enforcement officers’ efforts
 to protect communities, conduct investigations, and
 quickly apprehend offenders who commit sex offenses or
 certain offenses against minors are impaired by the lack of
 information available to law enforcement agencies about
 STATE V. FULLER

 2021-NCSC-20

 Opinion of the Court

 convicted offenders who live within the agency’s
 jurisdiction. Release of information about these offenders
 will further the governmental interests of public safety so
 long as the information released is rationally related to the
 furtherance of those goals.

 Therefore, it is the purpose of this Article to assist
 law enforcement agencies’ efforts to protect communities
 by requiring persons who are convicted of sex offenses or of
 certain other offenses committed against minors to register
 with law enforcement agencies, to require the exchange of
 relevant information about those offenders among law
 enforcement agencies, and to authorize the access to
 necessary and relevant information about those offenders
 to others as provided in this Article.

 N.C.G.S. § 14-208.5 (2019).

¶ 13 By the plain language of this section, our Legislature has determined that law

 enforcement agencies and the public need additional information about sex offenders

 because of the risks these individuals pose to communities and children. See Smith

 v. Doe, 538 U.S. 84, 93 (2003) (“[A]n imposition of restrictive measures on sex

 offenders adjudged to be dangerous is ‘a legitimate nonpunitive governmental

 objective and has been historically so regarded.’ ” (quoting Kansas v. Hendricks, 521

 U.S. 346, 363 (1997)).

¶ 14 On appeal, defendant argues that the Court of Appeals erred when it affirmed

 the trial court’s order of sex offender registration because the record failed to show

 that defendant was likely to commit sex offenses in the future. Further, defendant

 asserts that the trial court was required to consider a Static-99 assessment before
 STATE V. FULLER

 2021-NCSC-20

 Opinion of the Court

 ordering him to register as a sex offender. However, neither a Static-99 assessment,

 nor considerations of likelihood of recidivism, are dispositive on the issue of whether

 a defendant “is a danger to the community.”

¶ 15 The phrase “is a danger to the community” is not defined by N.C.G.S. § 14-

 202(l). In addition, the Legislature did not specify a time period for the determination

 of whether a defendant constitutes a “danger to the community.”

 A statute is an act of the Legislature as an organized body.
 . . . It must speak for and be construed by itself . . . .
 Otherwise each individual might attribute to it a different
 meaning, and thus the legislative will and meaning be lost
 sight of. Whatever may be the views and purposes of those
 who procure the enactment of a statute, the Legislature
 contemplates that its intention shall be ascertained from
 its words as embodied in it. And courts are not at liberty
 to accept the understanding of any individual as to the
 legislative intent.

 Abernethy v. Bd. of Comm’rs of Pitt Cnty., 169 N.C. 631, 639–40, 86 S.E. 577, 582

 (1915) (citation and quotation marks omitted). It is well-established that the

 “[o]rdinary rules of grammar apply when ascertaining the meaning of a statute, and

 the meaning must be construed according to the context and approved usage of the

 language.” Dunn v. Pac. Emps. Ins. Co., 332 N.C. 129, 134, 418 S.E.2d 645, 648

 (1992).

¶ 16 The term “is” has been defined as the “third person singular, present tense of

 be.” Is, WEBSTER’S II NEW COLLEGE DICTIONARY (3d ed. 2005). Therefore, the

 determination of whether a defendant “is a danger to the community” necessarily
 STATE V. FULLER

 2021-NCSC-20

 Opinion of the Court

 requires a trial court to consider whether the defendant currently constitutes a

 danger to the community. Further, this Court has previously indicated that the term

 “is” may be read more broadly to encompass a time period greater than the present.

 See Ex parte Barnes, 212 N.C. 735, 738, 194 S.E. 499, 501 (1938) (“Where a statute is

 expressed in general terms and in words of the present tense, it will as a general rule

 be construed to apply not only to things and conditions existing at its passage, but

 will also be given a prospective interpretation, by which it will apply to such as come

 into existence thereafter.” (citation and quotation marks omitted)).

¶ 17 In addition, we may look to other similar statutes to help define terms. See In

 re Banks, 295 N.C. 236, 239–40, 244 S.E.2d 386, 389 (1978) (“[T]he legislative intent

 . . . is to be ascertained by appropriate means and indicia . . . such as . . . previous

 interpretations of the same or similar statutes.” (cleaned up)).

¶ 18 The Legislature has used similar language in the context of involuntary

 commitments. Individuals who are determined to be “dangerous[ ] to self . . . or

 others” are subject to involuntary commitment orders. See N.C.G.S. § 122C-263(c)(2),

 (d)(2) (2019); N.C.G.S. § 122C-268(j) (2019). Finding that an individual is a danger

 to himself or others involves considerations of conduct “[w]ithin the relevant past”

 and “a reasonable probability of [similar conduct] within the near future.” N.C.G.S §

 122C-3(11)(a), (b) (2019).

¶ 19 Thus, in finding that a defendant “is a danger to the community” under
 STATE V. FULLER

 2021-NCSC-20

 Opinion of the Court

 N.C.G.S. § 14-202(l), a trial court may consider whether the defendant currently

 constitutes a “danger to the community” such that registration is appropriate. In

 addition, a finding that defendant “is a danger to the community” may also be

 satisfied upon a showing that, based upon the defendant’s conduct within the

 relevant past, there is a reasonable probability of similar conduct by the defendant

 in the near future.2 A determination that a defendant “is a danger to the community”

 is not based solely upon the consideration of a singular fact or predictive analysis.

 Rather, a trial court reaches such a finding through considering and weighing all of

 the evidence. See Knutton v. Cofield, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968)

 (stating that ultimate findings are “conclusive on appeal if there is evidence to

 support them, even though the evidence might sustain a finding to the contrary”).

¶ 20 Here, the trial court found the following evidentiary facts on the record:

 In this particular case it seems that there were recordings
 made over a long period of time. The fact that he only used
 one device as opposed to two and to move it place to place
 is to me more concerning than if he had had two devices,
 because he had . . . to do an intentional act. You know, the
 statement that this occurred because he was having
 feelings for the victim, . . . and the setup was apparently
 much more sophisticated than [Guerrette] where someone

 2 Here, defendant was not incarcerated upon his plea of guilty to secret peeping
 pursuant to N.C.G.S. § 14-202(d). Rather, he was placed on supervised probation for a period
 of twenty-four months. When a convicted sex offender is not incarcerated but is instead
 placed on probation, registration may be a necessary additional tool to protect communities.
 See N.C.G.S. § 14-208.5 (2019). In these cases, a trial court’s consideration of whether a sex
 offender currently constitutes a danger to the community may be a more relevant inquiry
 than that of prospective harm.
 STATE V. FULLER

 2021-NCSC-20

 Opinion of the Court

 was just in a woman’s bathroom with a cell phone. By
 having this secret device, moving . . . the secret device from
 room to room, the manner in which it was stored, and the
 fact . . . th[at] . . . anybody could get anything on the
 internet, so it would make it easy for him to buy similar
 devices off the internet . . . just make[s] it easier for him to
 buy these devices off the internet, [the c]ourt finds that he
 would be a danger to the community . . . .

¶ 21 In affirming the trial court, the Court of Appeals focused on the following

 evidentiary facts: (1) defendant’s willingness to take advantage of a close, personal

 relationship; (2) defendant’s use and execution of a sophisticated scheme intended to

 avoid detection; (3) the extended period of time that defendant deployed the hidden

 camera and obtained images of the victim; (4) defendant’s ability and decision to

 repeatedly invade the victim’s privacy; (5) defendant’s ability and willingness to cause

 significant and lasting emotional harm to his victim; (6) the ease with which

 defendant could commit similar crimes again in the future; and (7) defendant’s lack

 of remorse.3 Fuller, 268 N.C. App. at 243–44, 835 S.E.2d at 56. We hold that these

 facts, without taking the unsupported statement that defendant lacked remorse into

 account, suffice to establish defendant’s status as a “danger to the community.”

¶ 22 Because the evidentiary facts reasonably support the trial court’s ultimate fact

 that defendant “is a danger to the community,” we uphold the trial court’s sex

 offender registration order and affirm the decision of the Court of Appeals.

 3 There is no evidence in the record that defendant lacked remorse.
 STATE V. FULLER

 2021-NCSC-20

 Opinion of the Court

AFFIRMED.
 Justice EARLS dissenting.

¶ 23 The question in this case is whether a defendant may be considered a “danger

 to the community” and subject to registration as a sex offender solely on the basis of

 having committed a certain crime. There are some crimes for which this is the case

 by virtue of the statutory scheme established by the General Assembly. N.C.G.S. §

 14-208.6(4)(a) (2019) (requiring registration for persons convicted of sexually violent

 offenses and offenses against children). In contrast, the crime committed by Mr.

 Fuller, however repugnant and violative it may have been, is not one of those crimes.

 The majority divorces the registration requirement from the inquiry into whether the

 defendant is likely to reoffend, holding that the trial court may order registration

 even where there is no evidence that the defendant is likely to recidivate. This is

 contrary to our own precedent. See State v. Abshire, 363 N.C. 322, 323 (2009) (“In

 response to the threat to public safety posed by the recidivist tendencies of convicted

 sex offenders, ‘North Carolina, like every other state in the nation, enacted a sex

 offender registration program to protect the public.’ ”), superseded by statute, An Act

 to Protect North Carolina’s Children/Sex Offender Law Changes, S.L. 2006-247, §

 8(a), 2005 N.C. Sess. Laws 1065, 1070–71, as recognized in State v. Barnett, 368 N.C.

 710 (2016). Further, the majority’s decision could be interpreted to give trial courts

 unfettered license to order registration for all offenders, regardless of whether there

 is any indication that they are likely to pose a danger to the community, undermining

 the purposes of the program. This goes too far and is contrary to the will of the
 STATE V. FULLER

 2021-NCSC-20

 Earls, J., dissenting

 General Assembly. As a result, I respectfully dissent.

¶ 24 Mr. Fuller pleaded guilty to secret peeping in violation of N.C.G.S. § 14-202(d).

 The trial court sentenced Mr. Fuller to six to seventeen months’ imprisonment. The

 trial court suspended Mr. Fuller’s sentence of incarceration and instead imposed

 twenty-four months of supervised probation. The trial court also ordered Mr. Fuller

 to register as a sex offender for a period of thirty years.

¶ 25 There are a number of crimes which require automatic registration as a sex

 offender. For example, a sex offense against a minor is a reportable offense requiring

 registration as a sex offender. See N.C.G.S. § 14-208.6(4)(a). The same is true for a

 sexually violent offense. Id. However, secret peeping is not one of the offenses for

 which the General Assembly requires registration automatically upon conviction.

 Instead, when a person is convicted of secret peeping pursuant to subsection 14-

 202(d), the trial court is required to consider (1) “whether the person is a danger to

 the community” and (2) “whether requiring the person to register as a sex offender .

 . . would further the purposes” of the sex offender registration program. N.C.G.S. §

 14-202(l) (2019). For Mr. Fuller’s crime, the trial court orders registration as a sex

 offender if both conditions are satisfied. Id.

¶ 26 The General Assembly does not define the phrase “danger to the community”

 in the statute. See N.C.G.S. § 14-202; N.C.G.S. § 14-208.6. Nor has this Court

 interpreted section 14-202 to give meaning to the phrase “danger to the community.”
 STATE V. FULLER

 2021-NCSC-20

 Earls, J., dissenting

 As a result, the phrase’s meaning is a question of statutory construction. “The

 primary rule of statutory construction is that the intent of the legislature controls the

 interpretation of a statute. In seeking to discover this intent, the court should

 consider the language of the statute, the spirit of the act, and what the act seeks to

 accomplish.” Stevenson v. Durham, 281 N.C. 300, 303 (1972). Here, the statute’s

 purpose indicates that a person presents a danger to the community if that person is

 likely to reoffend.

¶ 27 The registration program exists “to assist law enforcement agencies’ efforts to

 protect communities by requiring persons who are convicted of sex offenses or of

 certain other offenses committed against minors to register with law enforcement

 agencies,” to promote the exchange of offender information among law enforcement

 agencies, and to provide access to information about sex offenders to others. N.C.G.S.

 § 14-208.5 (2019). The program’s statement of purpose provides that “sex offenders

 often pose a high risk of engaging in sex offenses even after being released from

 incarceration or commitment and that protection of the public from sex offenders is

 of paramount governmental interest.” Id. As a result, while subsection 14-202(l) does

 not define “danger to the community,” the statute’s purpose statement indicates that

 the legislature intended to require registration for persons who are likely to

 recidivate. See id. (statute’s purpose statement recognizing risk of recidivation); see

 also Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 215 (1990) (“The intent of
 STATE V. FULLER

 2021-NCSC-20

 Earls, J., dissenting

 the legislature controls the interpretation of a statute.”).

¶ 28 The majority here does not define “danger to the community,” choosing instead

 to investigate the meaning of the word “is.” However, the majority’s focus on the word

 “is” does not change the intent of the General Assembly, nor does it have any

 relevance to this case. No party has suggested an alternate meaning of the word “is.”

 Nor has any party argued that in this case the trial court must determine whether

 the defendant, while unable to reoffend now, will, at some point in the future, develop

 the capacity to become a recidivist. Instead, consistent with the stated intent of the

 General Assembly in the statute itself and the unvarying conclusions of our appellate

 courts for the past ten years, the trial court’s task is to determine, at the time of the

 hearing, whether the defendant is likely to recidivate. N.C.G.S. § 14-208.5 (stating

 intent of General Assembly); State v. Pell, 211 N.C. App. 376, 379 (2011) (“When

 examining the purposes of the sex offender registration statute, it is clear that ‘danger

 to the community’ refers to those sex offenders who pose a risk of engaging in sex

 offenses following release from incarceration or commitment.”); see State v. Guerrette,

 No. COA18-24, 2018 WL 4702230, at *2 (N.C. Ct. App. Oct. 2, 2018) (unpublished)

 (stating that the phrase “danger to the community” refers to sex offenders who pose

 a risk of reoffending); State v. Mastor, 243 N.C. App. 476, 483 (2015) (same); accord

 Abshire, 363 N.C. at 323 (“In response to the threat to public safety posed by the

 recidivist tendencies of convicted sex offenders, ‘North Carolina, like every other state
 STATE V. FULLER

 2021-NCSC-20

 Earls, J., dissenting

 in the nation, enacted a sex offender registration program to protect the public.’ ”);

 State v. Fuller, 268 N.C. App. 240, 243 n.4 (2019) (“[T]he trial court’s findings must

 demonstrate that the level of risk is such that there is a reasonable likelihood that

 the defendant in question will recidivate.”).

¶ 29 It is true that this is a forward-looking inquiry. But that is what the General

 Assembly intended. See N.C.G.S. § 14-202(l) (stating that a trial court shall order

 registration as a sex offender after considering whether registration “would further

 the purposes” stated in N.C.G.S. § 14-208.5); N.C.G.S. § 14-208.5 (statement of

 purpose for registration program recognizing need for protecting the public against

 recidivation by sex offenders) Indeed, it is difficult to imagine what “danger to the

 community” an offender could pose other than that danger which is represented by

 the risk of reoffending. While the majority concludes that the General Assembly’s use

 of the word “is” means that the trial court may consider whether the defendant

 “currently” represents a danger, that conclusion does not change the meaning of

 “danger to the community”—that the defendant is likely to reoffend.

¶ 30 Application of these principles to the facts of this case demonstrates that the

 trial court erred. The question before the trial court was whether Mr. Fuller was a

 danger to the community. See N.C.G.S. § 14-202(l). As the majority notes, this is an

 ultimate finding, which is “a conclusion of law or at least a determination of a mixed

 question of law and fact.” In re K.R.C., 374 N.C. 849, 858 (2020) (quoting In re N.D.A.,
 STATE V. FULLER

 2021-NCSC-20

 Earls, J., dissenting

 373 N.C. 71, 76 (2019)). Such a finding is to be distinguished from “the findings of

 primary, evidentiary, or circumstantial facts.” In re N.D.A., 373 N.C. at 76 (quoting

 Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 491 (1937)); see also Woodard v.

 Mordecai, 234 N.C. 463, 472 (1951) (“An ultimate fact is the final resulting effect

 which is reached by processes of logical reasoning from the evidentiary facts.”). As a

 result, we review the trial court’s findings of evidentiary facts to determine whether

 they “support [the trial court’s] ultimate findings of fact and conclusions of law.” In

 re N.G., 374 N.C. 891, 906–07 (2020).

¶ 31 It appears that the majority agrees with this standard of review, as it states

 that the decision below should be affirmed if the trial court’s findings of evidentiary

 fact support the trial court’s ultimate finding. The majority’s insertion of the words

 “could reasonably” has the potential to confuse litigants, but does not change the

 existing standard. While a reader could misinterpret the majority’s formulation of the

 standard to suggest that a trial court’s ultimate finding will be upheld if the evidence

 might support the ultimate finding, such an interpretation is not supported by our

 precedent. A trial court’s ultimate finding is either supported or unsupported. See In

 re N.D.A., 373 N.C. at 77 (stating that both findings of ultimate fact and conclusions

 of law “must have sufficient support in the trial court’s factual findings”). A reviewing

 court will not speculate or make inferences to supplement the record when the trial

 court’s evidentiary factual findings are lacking. See, e.g., Gallimore v. Marilyn’s
 STATE V. FULLER

 2021-NCSC-20

 Earls, J., dissenting

 Shoes, 292 N.C. 399, 402 (1977) (stating that evidentiary findings “are conclusive on

 appeal if supported by any competent evidence” but that, for ultimate findings of fact,

 “this Court may review the record to determine if the findings and conclusions are

 supported by sufficient evidence”); see also In re N.D.A., 373 N.C. at 78 (concluding

 that evidentiary fact findings were insufficient to support an ultimate finding where

 the evidentiary findings did not “adequately address” a required aspect of the

 ultimate finding); State v. White, 300 N.C. 494, 503–504 (1980) (observing, in the

 context of permissive presumptions, that there must be a “ ‘rational connection’

 between the basic facts that the prosecution proved and the ultimate fact presumed”

 to comport with due process) (quoting Cnty. Ct. v. Allen, 442 U.S. 140, 142 (1979)).

¶ 32 In the instant case, the trial court gave the following reasoning for its order:

 In this particular case it seems that there were recordings
 made over a long period of time. The fact that he only used
 one device as opposed to two and to move it place to place
 is to me more concerning than if he had had two devices,
 because he had to make—each time he had to move the
 device, he had to do an intentional act. You know, the
 statement that this occurred because he was having
 feelings for the victim, the—and the setup was apparently
 much more sophisticated than [Guerrette] where someone
 was just in a woman’s bathroom with a cell phone. By
 having this secret device, moving—moving the secret
 device from room to room, the manner in which it was
 stored, and the fact of the—as you said, anybody could get
 anything on the internet, so it would make it easy for him
 to buy similar devices off the internet once he’s—just make
 it easier for him to buy these devices off the internet,
 [the c]ourt finds that he would be a danger to the
 community and the purpose of the Registry Act would be
 STATE V. FULLER

 2021-NCSC-20

 Earls, J., dissenting

 served by requiring him to register for a period of 30 years.

¶ 33 The only fact identified by the trial court that reasonably relates to a risk of

 reoffending is the trial court’s observation that the defendant purchased a recording

 device from the internet, and that he could easily do so again. However, the General

 Assembly did not intend that any sex offense committed with a device purchased from

 the internet would result in registration as a sex offender. See N.C.G.S. § 14-202(f)

 (criminalizing secret peeping by use of “any device that can be used to create a

 photographic image”); N.C.G.S. § 14-202(l) (stating that such an offense is reportable

 only if the trial court finds that the defendant is a danger to the community).

 Moreover, the trial court’s logic here is merely a tautology. To say that defendant

 poses a risk of reoffending because he could again purchase a recording device off the

 internet amounts to saying he poses a risk of reoffending because he could reoffend.

 Instead, the trial court needed to examine the factors that typically indicate an

 individual is more likely to reoffend and determine which of those are true of this

 defendant. Absent such an inquiry, the trial court failed to comply with the statute.

 The trial court did not make sufficient evidentiary findings to support its ultimate

 finding that Mr. Fuller was a danger to the community.

¶ 34 The trial court’s suggestion that a risk assessment would have been irrelevant

 is further evidence of the trial court’s legal mistake, and underscores the trial court’s

 failure to consider Mr. Fuller’s likelihood of reoffending. After the trial court ordered
 STATE V. FULLER

 2021-NCSC-20

 Earls, J., dissenting

Mr. Fuller to register, Mr. Fuller’s defense counsel requested a continuance in order

to obtain a Static-99 risk assessment. The trial court denied the request, pointing out

that such a request would normally come before, not after, the trial court’s ruling.

The trial court was likely well within its discretion in denying such an untimely

request. See, e.g., State v. Branch, 306 N.C. 101, 104 (1982) (“A motion for

continuance, even when filed in a timely manner pursuant to G.S. 15A-952, is

ordinarily addressed to the sound discretion of the trial judge whose ruling thereon

is not subject to review absent an abuse of such discretion.”). However, when making

its ruling the trial court stated that the court has “had people who score low on the

Static 99 all the time and are placed on the sex offender registry. So my ruling stands

as it is.” This statement, suggesting that the results of a risk assessment would have

been irrelevant to the trial court’s inquiry into dangerousness, was wrong. In the

absence of any other record evidence indicating Mr. Fuller’s likelihood to commit

another sex offense, such an objective assessment would have been of some assistance

to the trial court as it fulfilled its statutory duty to determine whether Mr. Fuller was

a danger to the community. See N.C.G.S. § 14-202(l). The assessment may not be

dispositive or the only permissible type of evaluation—nothing in the statute

mandates its use. However, the trial court must have some basis on which to

determine that a defendant is likely to reoffend, which would mean that the

defendant poses a danger to the community. For this type of offense, the mere fact
 STATE V. FULLER

 2021-NCSC-20

 Earls, J., dissenting

 that he committed the crime is not sufficient to establish that he is a danger to the

 community. A basis for that conclusion does not appear in the record in this case.

¶ 35 The majority reaches the opposite result, concluding that the Court of Appeals

 did not err because it focused on the facts that Mr. Fuller took advantage of a close

 relationship, hid his activity from the victim and her husband, and recorded the

 victim over an extended period of time. However, none of these facts pertains to the

 likelihood of a defendant to reoffend. The majority also refers to “the ease with which

 defendant could commit similar crimes again in the future.” However, the only fact

 identified by the trial court on this point is that the defendant could purchase a device

 off the internet. As explained above, this does not provide sufficient support for a

 finding that a defendant is a danger to the community. Finally, the majority identifies

 a number of facts which do not appear in the trial court’s rationale, including

 “defendant’s ‘ability and willingness to cause significant and lasting emotional harm

 to his victim” and “defendant’s lack of remorse.” However, it is the job of the trial

 court, not the appellate court, to make factual findings. See, e.g., State v. Hyman, 371

 N.C. 363, 386 n.8 (2018) (“[T]he trial judge, rather than an appellate court, is

 responsible for resolving factual disputes in the record given the trial judge's superior

 opportunity to make such determinations.”); Godfrey v. Zoning Bd. of Adjustment,

 317 N.C. 51, 63 (1986) (“Fact finding is not a function of our appellate courts.”).

 Further, this last “fact” has the distinction of being unsupported by the record in
 STATE V. FULLER

 2021-NCSC-20

 Earls, J., dissenting

 addition to not being found by the trial court. The State’s recitation of the facts,

 provided during the plea colloquy, indicates that Mr. Fuller “was cooperative in the

 investigation” and “provide[d] a full statement to law enforcement.”

¶ 36 Importantly, the factors identified by the majority tell us that the defendant

 committed a crime. We knew that when the defendant was convicted. The purpose of

 the sex offender registry, however, is not to punish people who have committed

 crimes—it is to protect the public from harm. N.C.G.S. § 14-208.5; State v. Bowditch,

 364 N.C. 335, 342 (2010) (citing Smith v. Doe, 538 U.S. 84, 93 (2003) for the

 proposition that “nonpunitive sex offender registration statutes were designed to

 protect the public from harm”). As a result, the inquiry must be based on whether the

 defendant is likely to harm the community through reoffending. This is the only way

 to make sense of the General Assembly’s statement that it sought to further “law

 enforcement officers’ efforts to protect communities, conduct investigations, and

 quickly apprehend offenders who commit sex offenses or certain offenses against

 minors.” N.C.G.S. § 14-208.5. Unless Mr. Fuller is likely to commit another sex

 offense, registration does nothing to aid these law enforcement efforts.

¶ 37 The majority declines to explain how the evidentiary facts support the trial

 court’s conclusion that Mr. Fuller was a danger to the community, warranting

 registration as a sex offender. This is perhaps unsurprising, given that the only

 relevant evidentiary fact found by the trial court does not support the trial court’s
 STATE V. FULLER

 2021-NCSC-20

 Earls, J., dissenting

 ultimate determination. Instead, the majority affirms the decision of the Court of

 Appeals without any explanation of what it means to be a danger to the community,

 despite ten years of precedent which would suggest that the trial court’s order should

 be reversed. This leaves the trial court’s determination of whether a defendant should

 be required to register without any meaningful guideposts.

¶ 38 If the General Assembly had intended to impose registration as a sex offender

 for every person convicted of Mr. Fuller’s crime, regardless of whether they were

 likely to reoffend, it could have done so. But it did not. N.C.G.S. § 14-202(l). Instead,

 the General Assembly vested trial courts with (1) the authority to impose registration

 if certain criteria are met, and (2) the obligation to consider those criteria and make

 findings accordingly. Id. That did not happen in this case. I would hold that the trial

 court failed to appropriately consider whether Mr. Fuller was likely to reoffend. As a

 result, I respectfully dissent.