STATE TRUST COMPANY v. M & J FINANCE CORPORATION AND J. W. CASE.

(Filed 4 November, 1953.)

**1. Automobiles § 5: Chattel Mortgages § 10e: Estoppel § 6d—**

Where the mortgagor is left in possession of goods to be disposed of by him in the ordinary course of trade pursuant to an understanding between the parties, the mortgagor is the agent of the mortgagee to the extent that he may pass title to the goods, free of the mortgage lien, to a purchaser in the usual course of trade.

**2. Same—**

Where the evidence is conflicting as to whether the mortgagor in possession had authority or permission, in the course of dealings between the parties, to sell the chattels unless the mortgage debt was first paid off, or authority to collect any money for the mortgagee, an issue of fact is raised, and upon the determination of the issue as to estoppel by conduct in favor of the mortgagee, such mortgagee under his duly registered mortgage has priority of lien over a subsequent mortgagee or purchaser.

**3. Trial § 55—**

Where the parties agree that the court should find the facts, findings by the court have the force and effect of a verdict by a jury and are conclusive on appeal if they are supported by evidence. G.S. 1-184.

APPEAL by defendant M & J Finance Corporation from *Sink, J.,* at April-May Mixed Term, 1953, of HENDERSON.

Civil action for the recovery of personal property, to wit, a certain automobile under chattel mortgage,—resort being had to the ancillary remedy of claim and delivery. Article 36 of Chapter One of General Statutes.

Plaintiff in its complaint alleges, and on trial in Superior Court offered evidence tending to show:

1. That on 8 December, 1949, defendant J. W. Case, for purpose of securing payment of his promissory note of even date to plaintiff in the sum of $2,357.00, payable on demand, and bearing interest after date at the rate of six per centum per annum, executed and delivered to plaintiff a certain chattel mortgage covering a certain 1947 Buick automobile which at the time was located in the County of Henderson, and State of North Carolina, of which county and State he was then a resident; that this chattel mortgage was duly filed in the office of Register of Deeds of Henderson County on 9 December, 1949, and duly registered in Chattel Mortgage Book 114 at page 168; that the note so secured is past due, and there is now due and owing thereon the sum of $1,107.00, with interest; that plaintiff is the owner and holder of the note and mortgage, and the conditions of the mortgage have been broken; that since the execution of

the note and chattel mortgage, and after the latter was duly and properly registered, as aforesaid, said J. W. Case, as plaintiff is informed and believes, disposed of said Buick automobile, and same is now in possession of defendant M & J Finance Corporation in the county of Buncombe, State of North Carolina, who refuses, upon demand, to deliver it to plaintiff, who is entitled to immediate possession of same; that the automobile has not been taken for a tax, assessment, or fine, pursuant to statute, or seized by virtue of an execution or attachment against the property of plaintiff; that the value of the automobile is $1,250.00; and that writ of claim and delivery has been issued in this cause, for immediate possession of it, all parts thereof being declared to be a part of this complaint.

Defendant M & J Finance Company, in its answer, does not deny the allegations of the complaint in respect to the execution and registration of the chattel mortgage, but does deny that as against it, plaintiff is entitled to the possession of the automobile for any purpose.

And for further answer and defense, the defendant M & J Finance Company avers (1) That on 8 December, 1949, and prior thereto, and at all other times herein mentioned material to its defense, J. W. Case was engaged in the used automobile business in Henderson County, a fact well known to plaintiff, who from time to time financed said Case therein, and accepted chattel mortgages on trucks and automobiles either in single units, or in blanket, or on floor plan method, commonly used by dealers selling and trading in new and used automobiles;

(2 and 3) That plaintiff accepted the chattel mortgage here involved on a floor plan basis,—it covering also a 1947 Chevrolet and a 1947 Ford,—and Case had possession of all three automobiles described therein, and same were left in his possession, to be disposed of by him "in the ordinary course of his trade, in buying, exchanging and selling used cars, and the plaintiff . . . made . . . Case its agent to the extent that he could pass the title to the said cars so sold in the usual way to a purchaser or purchasers, freed of the lien of the chattel mortgage";

(4) "That . . . Case, in the ordinary course of his business and in the usual way and manner of doing business, sold and disposed of the Chevrolet automobile together with the Ford described in said chattel mortgage, and the plaintiff waived or released the said cars from the lien of said chattel mortgage";

(5) "That on or about May 4, 1950, the defendant J. W. Case, in the ordinary course of his trade, while trading and selling used automobiles, and in the usual way of doing business, sold and delivered the 1947 Buick automobile described in plaintiff's complaint to one W. E. Huggins, who was then a citizen and resident of Henderson County, North Carolina, and to secure the balance of purchase price of said automobile the said W. E. Huggins did, on May 4, 1950, make, execute and deliver to the

defendant J. W. Case a note and chattel mortgage in the sum of $888.75, which chattel mortgage is duly recorded in the office of the Register of Deeds for Henderson County in Book 117, page 179";

(6) That thereafter and on 4 May, 1950, the defendant Case, for valuable considerations, sold, transferred and delivered said note and chattel mortgage to this answering defendant, and it is at this time the owner thereof, and there is past due, unpaid and owing to it the sum of $770.25; that, as against plaintiff and Case, this chattel mortgage is a valid and subsisting first lien on said Buick automobile, freed and discharged from the purported lien of the chattel mortgage herein asserted by plaintiff;

(7) That the plaintiff, by its usual course of dealings with defendant Case, prior to and on 8 December, 1950, and at all other times material to this further answer and defense, in leaving said mortgaged cars in Case's possession to be disposed of in the ordinary course of trade, "is estopped, and should be estopped from claiming a lien on the Buick automobile" superior to the lien claimed by this answering defendant, as evidenced by the chattel mortgage made, executed and delivered to secure the balance of purchase on 4 May, 1950.

Wherefore defendant M & J Finance Company prays judgment, among other things, (1) that the chattel mortgage, dated 4 May, 1950, signed by W. E. Huggins, recorded as averred, be declared, as against plaintiff, a first and prior lien on the Buick automobile in question; (2) that it recover the possession of same; and (3) that it have such other and further relief as on the facts it may be entitled.

When the cause was called for hearing in Superior Court both the plaintiff and the defendant M & J Finance Corporation agreed in open court to waive trial by jury, "and that the court answer the issues arising in the same manner and form as would a jury." And immediately upon entering this stipulation, the trial court made the following ruling: "It appearing to the court that J. W. Case, named in the pleadings, has not been served with process, the court directs that the record show that this proceeding in no wise affects the said Case, even though his name appears in the original pleadings."

And upon the trial in Superior Court, plaintiff offered in evidence the entire record in claim and delivery, issued 16 February, 1951, including

(1) The affidavit in which the property is valued at $1,300;

(2) The plaintiff's undertaking, binding it to defendant in sum of $2,600 for the return of the property to defendant, with damages for its deterioration and detention, if the return be adjudged and can be had, and, if for any cause return cannot be had, for the payment to defendant of such sum as may be recovered against plaintiff for the value of the

property at the time of the seizure, with interest thereon as damages for such seizure and detention; and

(3) The return of the sheriff, dated 22 February, 1951, showing execution "by taking from the defendant the following personal property, described in the annexed affidavit: And after holding said property for three days, no defendant's undertaking being filed with me, I delivered the said property to the plaintiff on his undertaking."

Plaintiff, through the witness B. B. Massagee, its Vice-President and Cashier, identified the note and chattel mortgage executed to it by J. W. Case, and offered same in evidence. Then counsel for defendant admitted the chattel mortgage records in office of Register of Deeds, and later the record of this mortgage was offered in evidence.

Then this witness, under cross-examination, testified in pertinent part: " . . . We have done business with Case further back than 1949, taking mortgages on automobiles. Even prior to June 1, 1949, we financed single units for him. We were financing automobiles in a group for him. I knew that he was dealing in used cars at that time. I knew he was selling those cars in the usual course of his business. He had no permission to sell an automobile until after it was paid off. I knew all during 1949 he was selling these automobiles to his customers. I did not know he sold some of them and after he sold them would come and pay me off. This particular chattel mortgage I hold had three automobiles described in it, two, other than the Buick that is in dispute; he sold the Ford and Chevrolet. I do not know what day he sold the Ford,—it is not dated here. The first payment that I received on that chattel mortgage and note was January 30, 1950 . . . I have marked on the back of the note $750.00 on January 30, 1950 . . . The next check was received on April 26, 1950 . . . I have a notation there for $500.00 . . . it was "B.P.J." on it. I imagine that was B. P. Justice . . . I am of opinion Justice sold him the automobile . . . I cannot tell his Honor how many chattel mortgages I accepted from Case from July 1949 to June 1, 1950. I had all of them recorded."

Then the witness was interrogated as to transactions covered by certain recorded chattel mortgages, and as to those his testimony in the main tends to show that in respect to these matters his bank knew Case was a used car dealer, and that it dealt with him in the usual course of business.

Then the witness was asked the question: "And after he was selling them you were refinancing them for purchasers on his endorsement?" to which he replied: "As I stated a minute ago he brought the individual in the bank practically every time."

And the witness continued: "I did not know at the time and I do not know now that he sold the car before he actually brought the paper to me, or brought the purchaser to me . . . I would not swear either way."

At this point counsel for defendant M & J Finance Company undertook to examine the witness about the mortgage records of other transactions, and objection by plaintiff was sustained, to which defendant excepted.

Then the witness stated again: "I do not think there was another transaction after December 9, 1949, except renewals . . ."

And this colloquy between the witness and attorney followed:

"Q. Do you have any other security for balance due on this note you testified to other than the chattel mortgage? I mean did any other person endorse it or did you have a side guarantee or side agreement to stand for the balance of this note? A. Yes. Q. Whose? A. Mr. Justice. Q. B. P. Justice? A. Yes." The witness further testified: "The only agreement we had with Justice was that he will be responsible for any that we handle for Case, provided we cannot get it out of the collateral. He was part of the transaction. He has not paid this obligation . . . Mr. Justice got the automobile. We are holding the receipts from that automobile for him until this is decided . . . I have never had the automobile in my possession . . . ."

Q. "The sheriff never turned it over to you? A. No." Q. "Then B. P. Justice has possession and you have known that? A. Yes. . . . Mr. Justice sold the automobile . . . Q. You allowed him to sell it? A. Yes . . . ." Q. (By the court) "Under what authority did Mr. Justice get the car at all? A. I do not know . . . Q. It was your bank that sued out claim and delivery, wasn't it? A. Yes."

Then the witness concluded his testimony with this statement: "I never at any time gave Mr. Case authority to sell any car I had a mortgage on. I never at any time gave Mr. Case any authority to collect any money for me."

But, upon being recalled for further cross-examination, the witness testified: That he received from Mr. Justice the sum of $800; but that he did not give Justice permission to dispose of the car, or to do anything with it; that if he were allowed to keep the $800, there would be only $307 still owing; that, in regard to the sheriff's return showing the car was turned over to the State Trust Company, plaintiff, the sheriff did not turn it over "to me" or "to the bank." "I never saw the car . . . I am handling the whole transaction . . . I do not have the car now. I have not had it since February 16, 1951 . . . I still do not know who has it."

Here plaintiff rested its case, and defendant M & J Finance Company, reserving exception to denial of its motion for judgment as of nonsuit, introduced evidence tending to show:

1. The transactions between J. W. Case and W. E. Huggins, and between Case and this defendant, as set forth in the further answer and defense of this defendant, as hereinabove related.

2. That W. E. Huggins, having failed to comply with the conditions of the chattel mortgage executed by him on 4 May, 1950, released to defendant the possession of the Buick automobile on 15 August, 1950, and that same was kept in its possession until it was seized by the sheriff under the order in claim and delivery issued in this action.

3. That this defendant did not make any effort to examine the public records of Henderson County, of which W. E. Huggins was a resident, to determine if Case or Huggins owed any money on this Buick automobile.

Defendant then rested its case.

And plaintiff, in reply, over objections and exceptions by defendant M & J Finance Company offered testimony of B. P. Justice tending to show that when the sheriff of Buncombe County took possession of the car, he, Justice, was instructed by attorney for plaintiff to go get it, which he did; and that he gave Mr. Massagee $800 for purchase of the 1947 Buick automobile, bought at the courthouse door, supposed to be sold at public auction.

And the witness Justice testified on cross-examination that he sold the Buick three weeks later for $1,000 to a man Jackson, who does not now have it.

Plaintiff also offered in evidence portions of the further answer and defense of the answering defendant, and rested its case.

Thereupon defendant M & J Finance Company renewed its motion for judgment as of nonsuit, and again it was overruled, and again it excepted.

Then, pursuant to the stipulation of parties, these five issues were tendered to the court, and by the court answered as indicated:

"1. Is the plaintiff the owner and entitled to the immediate possession of the Buick automobile, bearing Serial No. 14592978, described in the plaintiff's complaint? Answer: Yes.

"2. What was the reasonable market value of the Buick automobile on the 16th day of February, 1951, at the time it was taken into possession for and on behalf of the plaintiff by the High Sheriff of Buncombe County? A. $1100.00.

"3. Is the said Buick automobile now available for delivery in accordance with the orders of this court? A. No.

"4. What was the reasonable value of the Buick automobile at the time it was disposed of at the instance of the plaintiff and before the adjudication of its ownership by the court? A. $1100.00.

"5. Is the plaintiff estopped by its conduct from denying the priority of the M & J Finance Corporation chattel mortgage recorded in Chattel Mortgage Book 117 at page 179, of Henderson County Deed records? A. No."

Thereupon the court adjudged that plaintiff is entitled to the possession of the Buick automobile.

Defendant M & J Finance Company excepts, and appeals therefrom to Supreme Court and assigns error.

*M. F. Toms for plaintiff, appellee.*
*E. L. Loftin for defendant, appellant.*

WINBORNE, J.   Basically the appellant, M & J Finance Company, challenges the judgment from which appeal is taken, on the ground that the court erred in answering the first and fifth issues as indicated.   It invokes, and undertakes to bring its case within the well settled principle of law stated and applied in *Discount Corp. v. Young,* 224 N.C. 89, 29 S.E. 2d 29, that a mortgagor left in possession of goods, which, in contemplation of the parties, are to be disposed of by him in the ordinary course of trade, is the agent of the mortgagee to the extent that he may pass title to the goods, sold in the usual way to a purchaser, freed of the mortgage lien, *R. R. v. Simpkins,* 178 N.C. 273, 100 S.E. 48, and recently restated in *Motor Co. v. Wood,* 237 N.C. 318, 75 S.E. 2d 312, in opinion by *Parker, J.,* in this manner: "When the owner of personal property in any form clothes another with the apparent title or power of disposition, and third parties are thereby induced to deal with him, they shall be protected," citing authorities, including *Discount Corp. v. Young, supra.*

However, applying this principle, this Court is of opinion, and holds that the evidence shown in the case on appeal is too susceptible of different interpretations and inferences to require a ruling, as a matter of law, that plaintiff, by its conduct, is estopped to deny the priority of the chattel mortgage asserted by defendant M & J Finance Company,—the issue to which the fifth is directed.

The evidence, taken in the light most favorable to plaintiff, seems to make a case for a jury.   While it is true that there is evidence tending to show that plaintiff had left the mortgaged automobiles in possession of Case, the mortgagor, to be disposed of in the ordinary course of trade, there is also evidence tending to show that, in the dealings between plaintiff and Case, the latter had no permission or authority to sell any automobile on which the plaintiff had a mortgage until it was paid off, nor did he have authority to collect any money for plaintiff.   This raises question for fact finding.

And when the parties to a civil action waive trial by jury, as they may do, and agree that the presiding judge may find the facts in respect to the issues of fact raised by the pleadings, G.S. 1-184, his findings of fact have the force and effect of a verdict by a jury upon the issues involved. N. C. Constitution, Art. IV, Sec. 13.   And his findings of fact are conclusive on appeal, if there be evidence to support them.   See *Burnsville*

*v. Boone,* 231 N.C. 577, 58 S.E. 2d 351, where authorities are assembled. See also *Briggs v. Briggs,* 234 N.C. 450, 67 S.E. 2d 349; *Thompson v. Thompson,* 235 N.C. 416, 70 S.E. 2d 495; *Ryan v. Trust Co.,* 235 N.C. 585, 70 S.E. 2d 853; *Coach Co. v. Coach Co.,* 237 N.C. 697, 76 S.E. 2d 47.

Applying this rule of practice the negative answer to the fifth issue is necessarily predicated upon a finding that Case was not vested with unrestricted power to sell the Buick automobile in question. Hence plaintiff had not waived the lien of its prior chattel mortgage. And the affirmative answer to the first issue follows as a matter of law.

Moreover, other assignments of error have been given due consideration, and, in view of the holding above, and the verdict on other issues, the matters to which such assignments of error relate become harmless.

No error.