IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-20

No. 447A19

Filed 12 March 2021

STATE OF NORTH CAROLINA

v.

RYAN KIRK FULLER

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 268 N.C. App. 240 (2019), affirming an order entered on 23 October 2018 by Judge A. Graham Shirley in Superior Court, Wake County. Heard in the Supreme Court on 11 January 2021.

*Joshua H. Stein, Attorney General, by Ryan Y. Park, Solicitor General, and Caryn Devins Strickland, Solicitor General Fellow, for the State-appellee.*

*Glenn Gerding, Appellate Defender, by Andrew DeSimone, Assistant Appellate Defender, for defendant-appellant.*

BERGER, Justice.

¶ 1     On October 23, 2018, defendant Ryan Kirk Fuller pleaded guilty to secret peeping pursuant to N.C.G.S. § 14-202(d). The trial court placed defendant on supervised probation and ordered him to register as a sex offender under N.C.G.S. § 14-202(*l*). Defendant appealed the order of sex offender registration, and the Court of Appeals affirmed the trial court's order. Defendant appeals.

## I.     Factual and Procedural Background

¶ 2        In August 2018, defendant lived with the Smith[1] family, whom he had known for over ten years, in their home in Apex, North Carolina. On August 17, 2018, Mr. Smith was watching television in his living room. Mr. Smith stepped outside to smoke a cigarette, and when he returned inside, Mr. Smith saw an image on his television of his wife undressing. Mrs. Smith was not home at the time, and the image was not from a live feed. Mr. Smith saw defendant, and he noticed defendant watching the video which contained the image of Mrs. Smith. Mr. Smith demanded that defendant leave the house and immediately reported the incident to the Apex Police Department.

¶ 3        Officers later spoke with defendant and obtained consent to search his computer. The search of defendant's laptop computer, cell phone, and external hard drives revealed that defendant had saved images and videos of Mrs. Smith in various states of undress from June 2018 to August 2018. Officers were able to determine that defendant had deployed a camera in the Smith's home to obtain photographs and videos of Mrs. Smith. Defendant moved the device between the Smiths' bedroom and bathroom. When questioned by officers, defendant waived his *Miranda* rights and admitted to deploying the camera and possessing images of Mrs. Smith. Defendant stated that he installed the camera because "he had developed feelings for [Mrs. Smith] at some point in the course of their friendship."

---

[1] Due to the sensitive nature of this case, pseudonyms will be used.

On September 11, 2018, defendant was indicted on three counts of secret peeping. On October 23, 2018, defendant pleaded guilty to one count of felony secret peeping pursuant to a plea arrangement with the State. The parties agreed that defendant would receive a suspended sentence and be placed on supervised probation for a period of twenty-four months. In addition, defendant was required to submit to a "mental health evaluation specific to sex offenders and comply with recommended treatment." The issue of sex offender registration was to be determined by the trial court. The plea was accepted by the trial court, and a hearing was then held to determine whether defendant would be required to register as a sex offender. Based upon the arguments of the parties, the trial court ordered defendant to register as a sex offender for thirty years. The trial court did not consider a Static-99 assessment when it determined that sex offender registration was appropriate.

On October 30, 2018, defendant filed written notice of appeal. In an opinion filed November 5, 2019, the Court of Appeals affirmed the trial court's order requiring defendant to register as a sex offender because the trial court's finding that defendant was a "danger to the community" was supported by competent evidence. *State v. Fuller*, 268 N.C. App. 240, 245, 835 S.E.2d 53, 56 (2019). The dissenting judge argued that there was insufficient evidence supporting the trial court's finding that defendant was a "danger to the community." *Id.* at 250, 835 S.E.2d at 59 (Brook, J., dissenting). Specifically, the dissenting judge contended that the State could not

show defendant was a "danger to the community" because the State failed to present evidence that defendant was likely to reoffend pursuant to *State v. Pell*, 211 N.C. App. 376, 712 S.E.2d 189 (2011), and *State v. Guerrette*, No. COA18-24, 2018 WL 4702230 (N.C. Ct. App. Oct. 2, 2018) (unpublished). *Id.* at 252–53, 835 S.E.2d at 61.

¶ 6          Defendant argues that the Court of Appeals erred when it affirmed the trial court's order which required defendant to register as a sex offender based on the finding that he was a "danger to the community." We disagree.

## II.     Standard of Review

¶ 7          The determination of whether an individual "is a danger to the community" under N.C.G.S. § 14-202(*l*) is an ultimate fact to be found by the trial court. "There are two kinds of facts: Ultimate facts, and evidentiary facts." *Woodard v. Mordecai*, 234 N.C. 463, 470, 67 S.E.2d 639, 644 (1951).

> Ultimate facts are those found in that vaguely defined area lying between evidential facts on the one side and conclusions of law on the other. In consequence, the line of demarcation between ultimate facts and legal conclusions is not easily drawn. An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts. Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law.

*Id.* at 472, 67 S.E.2d at 645 (citations omitted).

¶ 8          A trial court's finding of an ultimate fact is conclusive on appeal if the evidentiary facts reasonably support the trial court's ultimate finding. *Williams v.*

*Pilot Life Ins. Co.*, 288 N.C. 338, 343, 218 S.E.2d 368, 372 (1975); *see also Sherrill v. Boyce*, 265 N.C. 560, 560, 144 S.E.2d 596, 597 (1965) (per curiam); *State Tr. Co. v. M & J Fin. Corp.*, 238 N.C. 478, 484, 78 S.E.2d 327, 332 (1953). Thus, we must uphold the sex offender registration order if there are evidentiary facts that could reasonably support the trial court's determination that defendant "is a danger to the community."

¶ 9 Moreover, because this is the first opportunity for this Court to address sex offender registration pursuant to N.C.G.S. § 14-202(*l*), we interpret that statute de novo. *See City of Asheville v. Frost*, 370 N.C. 590, 591, 811 S.E.2d 560, 561 (2018) ("We review questions of statutory interpretation de novo.").

## III. Analysis

¶ 10 Generally, sex offender registration is required upon a defendant's conviction of a reportable sex offense. *See* N.C.G.S. § 14-208.7(a) (2019) ("A person who is a State resident and who has a reportable conviction shall be required to maintain registration with the sheriff of the county where the person resides."); N.C.G.S. § 14-208.6(4)(a) (2019) (defining what constitutes a reportable conviction); N.C.G.S. § 14-208.6(5) (2019) (defining what constitutes a sexually violent offense).

¶ 11 However, even though the crime of secret peeping is a sex offense, registration based upon a conviction for committing that offense is dependent upon additional considerations by the trial court. *See generally* N.C.G.S. § 14-202(d), (*l*). Following a

conviction for secret peeping pursuant to N.C.G.S. § 14-202(d), the trial court

> shall consider whether the person is a danger to the
> community and whether requiring the person to register as
> a sex offender pursuant to Article 27A of this Chapter
> would further the purposes of that Article as stated in G.S.
> 14-208.5. If the sentencing court rules that the person is a
> danger to the community and that the person shall
> register, then an order shall be entered requiring the
> person to register.

N.C.G.S. § 14-202(*l*) (2019). Thus, a defendant convicted of secret peeping under

N.C.G.S. § 14-202(d) is required to register as a sex offender only when the trial court,

after considering the purposes of the Sex Offender and Public Protection Registration

Programs, determines that a defendant "is a danger to the community."

¶ 12        Section 14-208.5 sets forth the purposes of the Sex Offender and Public

Protection Registration Programs as follows:

> The General Assembly recognizes that sex offenders
> often pose a high risk of engaging in sex offenses even after
> being released from incarceration or commitment and that
> protection of the public from sex offenders is of paramount
> governmental interest.

> The General Assembly also recognizes that persons
> who commit certain other types of offenses against minors,
> such as kidnapping, pose significant and unacceptable
> threats to the public safety and welfare of the children in
> this State and that the protection of those children is of
> great governmental interest. Further, the General
> Assembly recognizes that law enforcement officers' efforts
> to protect communities, conduct investigations, and
> quickly apprehend offenders who commit sex offenses or
> certain offenses against minors are impaired by the lack of
> information available to law enforcement agencies about

convicted offenders who live within the agency's jurisdiction. Release of information about these offenders will further the governmental interests of public safety so long as the information released is rationally related to the furtherance of those goals.

Therefore, it is the purpose of this Article to assist law enforcement agencies' efforts to protect communities by requiring persons who are convicted of sex offenses or of certain other offenses committed against minors to register with law enforcement agencies, to require the exchange of relevant information about those offenders among law enforcement agencies, and to authorize the access to necessary and relevant information about those offenders to others as provided in this Article.

N.C.G.S. § 14-208.5 (2019).

¶ 13     By the plain language of this section, our Legislature has determined that law enforcement agencies and the public need additional information about sex offenders because of the risks these individuals pose to communities and children. *See Smith v. Doe*, 538 U.S. 84, 93 (2003) ("[A]n imposition of restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate nonpunitive governmental objective and has been historically so regarded.'" (quoting *Kansas v. Hendricks*, 521 U.S. 346, 363 (1997)).

¶ 14     On appeal, defendant argues that the Court of Appeals erred when it affirmed the trial court's order of sex offender registration because the record failed to show that defendant was likely to commit sex offenses in the future. Further, defendant asserts that the trial court was required to consider a Static-99 assessment before

ordering him to register as a sex offender. However, neither a Static-99 assessment, nor considerations of likelihood of recidivism, are dispositive on the issue of whether a defendant "is a danger to the community."

¶ 15    The phrase "is a danger to the community" is not defined by N.C.G.S. § 14-202(*l*). In addition, the Legislature did not specify a time period for the determination of whether a defendant constitutes a "danger to the community."

> A statute is an act of the Legislature as an organized body. . . . It must speak for and be construed by itself . . . . Otherwise each individual might attribute to it a different meaning, and thus the legislative will and meaning be lost sight of. Whatever may be the views and purposes of those who procure the enactment of a statute, the Legislature contemplates that its intention shall be ascertained from its words as embodied in it. And courts are not at liberty to accept the understanding of any individual as to the legislative intent.

*Abernethy v. Bd. of Comm'rs of Pitt Cnty.*, 169 N.C. 631, 639–40, 86 S.E. 577, 582 (1915) (citation and quotation marks omitted). It is well-established that the "[o]rdinary rules of grammar apply when ascertaining the meaning of a statute, and the meaning must be construed according to the context and approved usage of the language." *Dunn v. Pac. Emps. Ins. Co.*, 332 N.C. 129, 134, 418 S.E.2d 645, 648 (1992).

¶ 16    The term "is" has been defined as the "third person singular, present tense of be." *Is,* WEBSTER'S II NEW COLLEGE DICTIONARY (3d ed. 2005). Therefore, the determination of whether a defendant "is a danger to the community" necessarily

requires a trial court to consider whether the defendant currently constitutes a danger to the community. Further, this Court has previously indicated that the term "is" may be read more broadly to encompass a time period greater than the present. *See Ex parte Barnes*, 212 N.C. 735, 738, 194 S.E. 499, 501 (1938) ("Where a statute is expressed in general terms and in words of the present tense, it will as a general rule be construed to apply not only to things and conditions existing at its passage, but will also be given a prospective interpretation, by which it will apply to such as come into existence thereafter." (citation and quotation marks omitted)).

¶ 17    In addition, we may look to other similar statutes to help define terms. *See In re Banks*, 295 N.C. 236, 239–40, 244 S.E.2d 386, 389 (1978) ("[T]he legislative intent . . . is to be ascertained by appropriate means and *indicia* . . . such as . . . previous interpretations of the same or similar statutes." (cleaned up)).

¶ 18    The Legislature has used similar language in the context of involuntary commitments. Individuals who are determined to be "dangerous[ ] to self . . . or others" are subject to involuntary commitment orders. *See* N.C.G.S. § 122C-263(c)(2), (d)(2) (2019); N.C.G.S. § 122C-268(j) (2019). Finding that an individual is a danger to himself or others involves considerations of conduct "[w]ithin the relevant past" and "a reasonable probability of [similar conduct] within the near future." N.C.G.S § 122C-3(11)(a), (b) (2019).

¶ 19    Thus, in finding that a defendant "is a danger to the community" under

N.C.G.S. § 14-202(*l*), a trial court may consider whether the defendant currently

constitutes a "danger to the community" such that registration is appropriate. In

addition, a finding that defendant "is a danger to the community" may also be

satisfied upon a showing that, based upon the defendant's conduct within the

relevant past, there is a reasonable probability of similar conduct by the defendant

in the near future.[2] A determination that a defendant "is a danger to the community"

is not based solely upon the consideration of a singular fact or predictive analysis.

Rather, a trial court reaches such a finding through considering and weighing all of

the evidence. *See Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968)

(stating that ultimate findings are "conclusive on appeal if there is evidence to

support them, even though the evidence might sustain a finding to the contrary").

¶ 20          Here, the trial court found the following evidentiary facts on the record:

> In this particular case it seems that there were recordings
> made over a long period of time. The fact that he only used
> one device as opposed to two and to move it place to place
> is to me more concerning than if he had had two devices,
> because he had . . . to do an intentional act. You know, the
> statement that this occurred because he was having
> feelings for the victim, . . . and the setup was apparently
> much more sophisticated than [*Guerrette*] where someone

---

[2] Here, defendant was not incarcerated upon his plea of guilty to secret peeping pursuant to N.C.G.S. § 14-202(d). Rather, he was placed on supervised probation for a period of twenty-four months. When a convicted sex offender is not incarcerated but is instead placed on probation, registration may be a necessary additional tool to protect communities. *See* N.C.G.S. § 14-208.5 (2019). In these cases, a trial court's consideration of whether a sex offender currently constitutes a danger to the community may be a more relevant inquiry than that of prospective harm.

> was just in a woman's bathroom with a cell phone. By having this secret device, moving . . . the secret device from room to room, the manner in which it was stored, and the fact . . . th[at] . . . anybody could get anything on the internet, so it would make it easy for him to buy similar devices off the internet . . . just make[s] it easier for him to buy these devices off the internet, [the c]ourt finds that he would be a danger to the community . . . .

¶ 21 In affirming the trial court, the Court of Appeals focused on the following evidentiary facts: (1) defendant's willingness to take advantage of a close, personal relationship; (2) defendant's use and execution of a sophisticated scheme intended to avoid detection; (3) the extended period of time that defendant deployed the hidden camera and obtained images of the victim; (4) defendant's ability and decision to repeatedly invade the victim's privacy; (5) defendant's ability and willingness to cause significant and lasting emotional harm to his victim; (6) the ease with which defendant could commit similar crimes again in the future; and (7) defendant's lack of remorse.[3] *Fuller*, 268 N.C. App. at 243–44, 835 S.E.2d at 56. We hold that these facts, without taking the unsupported statement that defendant lacked remorse into account, suffice to establish defendant's status as a "danger to the community."

¶ 22 Because the evidentiary facts reasonably support the trial court's ultimate fact that defendant "is a danger to the community," we uphold the trial court's sex offender registration order and affirm the decision of the Court of Appeals.

---

[3] There is no evidence in the record that defendant lacked remorse.

AFFIRMED.

Justice EARLS dissenting.

The question in this case is whether a defendant may be considered a "danger to the community" and subject to registration as a sex offender solely on the basis of having committed a certain crime. There are some crimes for which this is the case by virtue of the statutory scheme established by the General Assembly. N.C.G.S. § 14-208.6(4)(a) (2019) (requiring registration for persons convicted of sexually violent offenses and offenses against children). In contrast, the crime committed by Mr. Fuller, however repugnant and violative it may have been, is not one of those crimes. The majority divorces the registration requirement from the inquiry into whether the defendant is likely to reoffend, holding that the trial court may order registration even where there is no evidence that the defendant is likely to recidivate. This is contrary to our own precedent. *See State v. Abshire*, 363 N.C. 322, 323 (2009) ("In response to the threat to public safety posed by the recidivist tendencies of convicted sex offenders, 'North Carolina, like every other state in the nation, enacted a sex offender registration program to protect the public.' "), *superseded by statute*, An Act to Protect North Carolina's Children/Sex Offender Law Changes, S.L. 2006-247, § 8(a), 2005 N.C. Sess. Laws 1065, 1070–71, *as recognized in State v. Barnett*, 368 N.C. 710 (2016). Further, the majority's decision could be interpreted to give trial courts unfettered license to order registration for all offenders, regardless of whether there is any indication that they are likely to pose a danger to the community, undermining the purposes of the program. This goes too far and is contrary to the will of the

General Assembly. As a result, I respectfully dissent.

Mr. Fuller pleaded guilty to secret peeping in violation of N.C.G.S. § 14-202(d). The trial court sentenced Mr. Fuller to six to seventeen months' imprisonment. The trial court suspended Mr. Fuller's sentence of incarceration and instead imposed twenty-four months of supervised probation. The trial court also ordered Mr. Fuller to register as a sex offender for a period of thirty years.

There are a number of crimes which require automatic registration as a sex offender. For example, a sex offense against a minor is a reportable offense requiring registration as a sex offender. *See* N.C.G.S. § 14-208.6(4)(a). The same is true for a sexually violent offense. *Id.* However, secret peeping is not one of the offenses for which the General Assembly requires registration automatically upon conviction. Instead, when a person is convicted of secret peeping pursuant to subsection 14-202(d), the trial court is required to consider (1) "whether the person is a danger to the community" and (2) "whether requiring the person to register as a sex offender . . . would further the purposes" of the sex offender registration program. N.C.G.S. § 14-202(*l*) (2019). For Mr. Fuller's crime, the trial court orders registration as a sex offender if both conditions are satisfied. *Id.*

The General Assembly does not define the phrase "danger to the community" in the statute. *See* N.C.G.S. § 14-202; N.C.G.S. § 14-208.6. Nor has this Court interpreted section 14-202 to give meaning to the phrase "danger to the community."

As a result, the phrase's meaning is a question of statutory construction. "The primary rule of statutory construction is that the intent of the legislature controls the interpretation of a statute. In seeking to discover this intent, the court should consider the language of the statute, the spirit of the act, and what the act seeks to accomplish." *Stevenson v. Durham*, 281 N.C. 300, 303 (1972). Here, the statute's purpose indicates that a person presents a danger to the community if that person is likely to reoffend.

The registration program exists "to assist law enforcement agencies' efforts to protect communities by requiring persons who are convicted of sex offenses or of certain other offenses committed against minors to register with law enforcement agencies," to promote the exchange of offender information among law enforcement agencies, and to provide access to information about sex offenders to others. N.C.G.S. § 14-208.5 (2019). The program's statement of purpose provides that "sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and that protection of the public from sex offenders is of paramount governmental interest." *Id.* As a result, while subsection 14-202(*l*) does not define "danger to the community," the statute's purpose statement indicates that the legislature intended to require registration for persons who are likely to recidivate. *See id.* (statute's purpose statement recognizing risk of recidivation); *see also Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 215 (1990) ("The intent of

the legislature controls the interpretation of a statute.").

¶ 28        The majority here does not define "danger to the community," choosing instead to investigate the meaning of the word "is." However, the majority's focus on the word "is" does not change the intent of the General Assembly, nor does it have any relevance to this case. No party has suggested an alternate meaning of the word "is." Nor has any party argued that in this case the trial court must determine whether the defendant, while unable to reoffend now, will, at some point in the future, develop the capacity to become a recidivist. Instead, consistent with the stated intent of the General Assembly in the statute itself and the unvarying conclusions of our appellate courts for the past ten years, the trial court's task is to determine, at the time of the hearing, whether the defendant is likely to recidivate. N.C.G.S. § 14-208.5 (stating intent of General Assembly); *State v. Pell*, 211 N.C. App. 376, 379 (2011) ("When examining the purposes of the sex offender registration statute, it is clear that 'danger to the community' refers to those sex offenders who pose a risk of engaging in sex offenses following release from incarceration or commitment."); *see State v. Guerrette*, No. COA18-24, 2018 WL 4702230, at *2 (N.C. Ct. App. Oct. 2, 2018) (unpublished) (stating that the phrase "danger to the community" refers to sex offenders who pose a risk of reoffending); *State v. Mastor*, 243 N.C. App. 476, 483 (2015) (same); *accord Abshire*, 363 N.C. at 323 ("In response to the threat to public safety posed by the recidivist tendencies of convicted sex offenders, 'North Carolina, like every other state

in the nation, enacted a sex offender registration program to protect the public.' ");
*State v. Fuller*, 268 N.C. App. 240, 243 n.4 (2019) ("[T]he trial court's findings must
demonstrate that the level of risk is such that there is a reasonable likelihood that
the defendant in question will recidivate.").

¶ 29        It is true that this is a forward-looking inquiry. But that is what the General
Assembly intended. *See* N.C.G.S. § 14-202(*l*) (stating that a trial court shall order
registration as a sex offender after considering whether registration "would further
the purposes" stated in N.C.G.S. § 14-208.5); N.C.G.S. § 14-208.5 (statement of
purpose for registration program recognizing need for protecting the public against
recidivation by sex offenders) Indeed, it is difficult to imagine what "danger to the
community" an offender could pose other than that danger which is represented by
the risk of reoffending. While the majority concludes that the General Assembly's use
of the word "is" means that the trial court may consider whether the defendant
"currently" represents a danger, that conclusion does not change the meaning of
"danger to the community"—that the defendant is likely to reoffend.

¶ 30        Application of these principles to the facts of this case demonstrates that the
trial court erred. The question before the trial court was whether Mr. Fuller was a
danger to the community. *See* N.C.G.S. § 14-202(*l*). As the majority notes, this is an
ultimate finding, which is "a conclusion of law or at least a determination of a mixed
question of law and fact." *In re K.R.C.*, 374 N.C. 849, 858 (2020) (quoting *In re N.D.A.*,

373 N.C. 71, 76 (2019)). Such a finding is to be distinguished from "the findings of primary, evidentiary, or circumstantial facts." *In re N.D.A.*, 373 N.C. at 76 (quoting *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 491 (1937)); *see also Woodard v. Mordecai*, 234 N.C. 463, 472 (1951) ("An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts."). As a result, we review the trial court's findings of evidentiary facts to determine whether they "support [the trial court's] ultimate findings of fact and conclusions of law." *In re N.G.*, 374 N.C. 891, 906–07 (2020).

It appears that the majority agrees with this standard of review, as it states that the decision below should be affirmed if the trial court's findings of evidentiary fact support the trial court's ultimate finding. The majority's insertion of the words "could reasonably" has the potential to confuse litigants, but does not change the existing standard. While a reader could misinterpret the majority's formulation of the standard to suggest that a trial court's ultimate finding will be upheld if the evidence *might* support the ultimate finding, such an interpretation is not supported by our precedent. A trial court's ultimate finding is either supported or unsupported. *See In re N.D.A.*, 373 N.C. at 77 (stating that both findings of ultimate fact and conclusions of law "must have sufficient support in the trial court's factual findings"). A reviewing court will not speculate or make inferences to supplement the record when the trial court's evidentiary factual findings are lacking. *See, e.g., Gallimore v. Marilyn's*

*Shoes*, 292 N.C. 399, 402 (1977) (stating that evidentiary findings "are conclusive on appeal if supported by any competent evidence" but that, for ultimate findings of fact, "this Court may review the record to determine if the findings and conclusions are supported by sufficient evidence"); *see also In re N.D.A.*, 373 N.C. at 78 (concluding that evidentiary fact findings were insufficient to support an ultimate finding where the evidentiary findings did not "adequately address" a required aspect of the ultimate finding); *State v. White*, 300 N.C. 494, 503–504 (1980) (observing, in the context of permissive presumptions, that there must be a " 'rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed" to comport with due process) (quoting *Cnty. Ct. v. Allen*, 442 U.S. 140, 142 (1979)).

¶ 32        In the instant case, the trial court gave the following reasoning for its order:

> In this particular case it seems that there were recordings made over a long period of time. The fact that he only used one device as opposed to two and to move it place to place is to me more concerning than if he had had two devices, because he had to make—each time he had to move the device, he had to do an intentional act. You know, the statement that this occurred because he was having feelings for the victim, the—and the setup was apparently much more sophisticated than [*Guerrette*] where someone was just in a woman's bathroom with a cell phone. By having this secret device, moving—moving the secret device from room to room, the manner in which it was stored, and the fact of the—as you said, anybody could get anything on the internet, so it would make it easy for him to buy similar devices off the internet once he's—just make it easier for him to buy these devices off the internet, [the c]ourt finds that he would be a danger to the community and the purpose of the Registry Act would be

served by requiring him to register for a period of 30 years.

¶ 33      The only fact identified by the trial court that reasonably relates to a risk of reoffending is the trial court's observation that the defendant purchased a recording device from the internet, and that he could easily do so again. However, the General Assembly did not intend that any sex offense committed with a device purchased from the internet would result in registration as a sex offender. *See* N.C.G.S. § 14-202(f) (criminalizing secret peeping by use of "any device that can be used to create a photographic image"); N.C.G.S. § 14-202(l) (stating that such an offense is reportable only if the trial court finds that the defendant is a danger to the community). Moreover, the trial court's logic here is merely a tautology. To say that defendant poses a risk of reoffending because he could again purchase a recording device off the internet amounts to saying he poses a risk of reoffending because he could reoffend. Instead, the trial court needed to examine the factors that typically indicate an individual is more likely to reoffend and determine which of those are true of this defendant. Absent such an inquiry, the trial court failed to comply with the statute. The trial court did not make sufficient evidentiary findings to support its ultimate finding that Mr. Fuller was a danger to the community.

¶ 34      The trial court's suggestion that a risk assessment would have been irrelevant is further evidence of the trial court's legal mistake, and underscores the trial court's failure to consider Mr. Fuller's likelihood of reoffending. After the trial court ordered

Mr. Fuller to register, Mr. Fuller's defense counsel requested a continuance in order to obtain a Static-99 risk assessment. The trial court denied the request, pointing out that such a request would normally come before, not after, the trial court's ruling. The trial court was likely well within its discretion in denying such an untimely request. *See, e.g.*, *State v. Branch*, 306 N.C. 101, 104 (1982) ("A motion for continuance, even when filed in a timely manner pursuant to G.S. 15A-952, is ordinarily addressed to the sound discretion of the trial judge whose ruling thereon is not subject to review absent an abuse of such discretion."). However, when making its ruling the trial court stated that the court has "had people who score low on the Static 99 all the time and are placed on the sex offender registry. So my ruling stands as it is." This statement, suggesting that the results of a risk assessment would have been irrelevant to the trial court's inquiry into dangerousness, was wrong. In the absence of any other record evidence indicating Mr. Fuller's likelihood to commit another sex offense, such an objective assessment would have been of some assistance to the trial court as it fulfilled its statutory duty to determine whether Mr. Fuller was a danger to the community. *See* N.C.G.S. § 14-202(*l*). The assessment may not be dispositive or the only permissible type of evaluation—nothing in the statute mandates its use. However, the trial court must have some basis on which to determine that a defendant is likely to reoffend, which would mean that the defendant poses a danger to the community. For this type of offense, the mere fact

that he committed the crime is not sufficient to establish that he is a danger to the community. A basis for that conclusion does not appear in the record in this case.

¶ 35        The majority reaches the opposite result, concluding that the Court of Appeals did not err because it focused on the facts that Mr. Fuller took advantage of a close relationship, hid his activity from the victim and her husband, and recorded the victim over an extended period of time. However, none of these facts pertains to the likelihood of a defendant to reoffend. The majority also refers to "the ease with which defendant could commit similar crimes again in the future." However, the only fact identified by the trial court on this point is that the defendant could purchase a device off the internet. As explained above, this does not provide sufficient support for a finding that a defendant is a danger to the community. Finally, the majority identifies a number of facts which do not appear in the trial court's rationale, including "defendant's 'ability and willingness to cause significant and lasting emotional harm to his victim'" and "defendant's lack of remorse." However, it is the job of the trial court, not the appellate court, to make factual findings. *See, e.g.*, *State v. Hyman*, 371 N.C. 363, 386 n.8 (2018) ("[T]he trial judge, rather than an appellate court, is responsible for resolving factual disputes in the record given the trial judge's superior opportunity to make such determinations."); *Godfrey v. Zoning Bd. of Adjustment*, 317 N.C. 51, 63 (1986) ("Fact finding is not a function of our appellate courts."). Further, this last "fact" has the distinction of being unsupported by the record in

addition to not being found by the trial court. The State's recitation of the facts, provided during the plea colloquy, indicates that Mr. Fuller "was cooperative in the investigation" and "provide[d] a full statement to law enforcement."

¶ 36      Importantly, the factors identified by the majority tell us that the defendant committed a crime. We knew that when the defendant was convicted. The purpose of the sex offender registry, however, is not to punish people who have committed crimes—it is to protect the public from harm. N.C.G.S. § 14-208.5; *State v. Bowditch*, 364 N.C. 335, 342 (2010) (citing *Smith v. Doe*, 538 U.S. 84, 93 (2003) for the proposition that "nonpunitive sex offender registration statutes were designed to protect the public from harm"). As a result, the inquiry must be based on whether the defendant is likely to harm the community through reoffending. This is the only way to make sense of the General Assembly's statement that it sought to further "law enforcement officers' efforts to protect communities, conduct investigations, and quickly apprehend offenders who commit sex offenses or certain offenses against minors." N.C.G.S. § 14-208.5. Unless Mr. Fuller is likely to commit another sex offense, registration does nothing to aid these law enforcement efforts.

¶ 37      The majority declines to explain how the evidentiary facts support the trial court's conclusion that Mr. Fuller was a danger to the community, warranting registration as a sex offender. This is perhaps unsurprising, given that the only relevant evidentiary fact found by the trial court does not support the trial court's

ultimate determination. Instead, the majority affirms the decision of the Court of Appeals without any explanation of what it means to be a danger to the community, despite ten years of precedent which would suggest that the trial court's order should be reversed. This leaves the trial court's determination of whether a defendant should be required to register without any meaningful guideposts.

¶ 38        If the General Assembly had intended to impose registration as a sex offender for every person convicted of Mr. Fuller's crime, regardless of whether they were likely to reoffend, it could have done so. But it did not. N.C.G.S. § 14-202(*l*). Instead, the General Assembly vested trial courts with (1) the authority to impose registration if certain criteria are met, and (2) the obligation to consider those criteria and make findings accordingly. *Id.* That did not happen in this case. I would hold that the trial court failed to appropriately consider whether Mr. Fuller was likely to reoffend. As a result, I respectfully dissent.